IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE DELMAS RAY BURKETT, II REVOCABLE TRUST, by DELMAS RAY BURKETT, II, TRUSTEE and THE SHELDON JAY BURKETT REVOCABLE TRUST, by SHELDON JAY BURKETT, TRUSTEE, <br>         Plaintiffs, <br><br>vs. <br><br>EXCO RESOURCES (PA), LLC, <br>         Defendant. | Civil Action No. 2:11-cv-1394 <br><br> Judge Mark R. Hornak |

## MEMORANDUM OPINION

**Mark R. Hornak, United States District Judge**

The Plaintiffs, The Delmas Ray Burkett, II Revocable Trust, by Delmas Ray Burkett, II, Trustee and The Sheldon Jay Burkett Revocable Trust, by Sheldon Jay Burkett, Trustee (collectively, the "Plaintiffs" or the "Burkett Trusts") brought this action in the Court of Common Pleas of Jefferson County, Pennsylvania seeking a declaration that an oil and gas lease dated July 13, 1916 is deemed cancelled in part because the Defendant, EXCO Resources (PA), LLC ("Defendant," or "EXCO"), (a) breached certain express provisions of the lease thereby requiring the surrender of 130 undeveloped acres of a 180-acre leasehold; and (b) breached implied covenants to fully develop the premises. EXCO removed the case to this Court on diversity grounds,[1] and shortly thereafter, pursuant to Federal Rule of Civil Procedure 12(b)(6),

---

[1] The Plaintiffs initially moved to remand this action to the Court of Common Pleas of Jefferson County, Pennsylvania, arguing that removal was improper based upon this Court's lack of subject matter jurisdiction. After

1

moved to dismiss the Amended Complaint for Declaratory Judgment ("Amended Complaint") for failure to state a claim upon which relief may be granted. The Court has considered Plaintiffs' Amended Complaint (ECF No. 1-2), Defendant's Motion to Dismiss (ECF No. 9), the various briefs in support of and opposition to the Motion to Dismiss (ECF Nos. 10, 12, 15), and the parties have addressed the Motion to Dismiss at oral argument to the Court. For the following reasons, the Motion to Dismiss is denied.

## *I. FACTUAL BACKGROUND*

When reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court accepts all of the factual allegations in the Amended Complaint as true and draws all reasonable inferences in favor of the non-moving party. See Fowler v. UPMC Shadyside, 578 F.3d 203, 211-12 (3d Cir. 2009). Therefore, for purposes of disposition of EXCO's motion to dismiss, the essential facts are as follows.

On or about July 13, 1916, Mina Kougher and D.L. Kougher (collectively, the "Grantors") and W.T. Lewis (as to Lewis and his successor in interest, the "Grantee") entered into an oil and gas lease (hereinafter, the "Lease") by which the Grantee was given the exclusive right to drill for oil and gas under approximately 180 acres in Oliver Township, Jefferson County, Pennsylvania (the "Premises"). In addition to the exclusive drilling rights afforded by the Lease, the Grantors gave the Grantee "all the oil and gas in and under [the Premises], and also all [of the Premises] for the sole and only purpose" of extracting oil and/or gas. The

---

presenting argument, however, the Burkett Trusts withdrew the motion to remand. Nonetheless, in order to confirm its own jurisdiction, the Court directed the Defendant to file a supplemental declaration, 28 U.S.C. § 1653, of an authorized executive official setting forth the citizenship of the constituents of the Defendant LLC, as required by our Court of Appeals in Zambelli Fireworks Mfg. Co., Inc. v. Wood, 592 F.3d 419 (3d Cir. 2010). The Defendant has now filed such declaration (ECF No. 19) and has thereby fulfilled both this Court's Order and the showing required by Zambelli. Therefore, based on the Plaintiffs' withdrawal of their Motion to Remand, and the Court's independent examination of the Defendant's filings addressed to the citizenship of the parties confirming that jurisdiction is proper under 28 U.S.C. § 1332, the Court need not consider that matter further.

2

primary term of the Lease was for a period of ten (10) years with an indefinite secondary term for "as much longer as the [P]remises are being drilled or operated for the production of oil or gas, or as oil or gas is found or produced in paying quantities thereon." (ECF No. 1-2, at 24).

The Lease gave the Grantors the express ability to reclaim the grant by their declaration of a forfeiture, "unless one producing well [was] completed on the [P]remises within 30 days from the date" the parties executed the Lease. Id. The Grantee could avoid such forfeiture if the Grantors were paid quarterly rental payments of $0.25/acre for the entire Premises, paid in advance, for every three months that the completion of one producing well was delayed during the primary term. After the first producing well was completed, the Grantee was obligated to continue to pay the $0.25/acre "delay rental" to the Grantors on all but ninety (90) acres of the Premises until a second producing well was completed. After completion of the second producing well, these delay rental payments ceased and the Grantee was then required to pay the Grantors royalties based upon the production of drilled wells. The parties refer to the provisions setting forth these initial rights and obligations as the "Development Clause."[2]

The Lease then provides in a subsequently-appearing provision that if the Grantee determines that the Premises, "or *any part thereof*, does not warrant *further* investigation or development," the Grantee shall surrender and cancel the Lease either in whole or in part (the "Surrender Clause").[3] Id. (emphasis added).

---

[2] The Development Clause provides that "Grantors may declare a forfeiture of this grant, unless one producing well shall be completed on the premises within thirty days from the date hereof, or unless the Grantee shall pay a rental of twenty five cents per acre, in advance, for each additional three months such completion is delayed from the time above mentioned for the completion of said well until one producing well is completed. After the completion of said well the said rental shall continue to be paid on all except ninety acres of said premises retained by the Grantee until a second well is completed." (ECF No. 1-2, at 24).

[3] The Surrender Clause states: "IT IS AGREED, that if at any time or times the Grantee shall determine that the said premises, or any part thereof, does not warrant further investigation or development, the Grantee shall thereupon surrender and cancel this grant, either as a whole or as to such part of the premises hereinbefore described, as does not warrant further investigation or development; and upon delivering direct to the Grantors, or either of them, or

During the primary term of the Lease, four (4) producing wells were completed, two (2) of which were later plugged and abandoned. Currently, there are two (2) functioning wells on the Premises. Plaintiffs claim that each of these wells requires approximately 25 acres in order to operate properly. (Complaint at ¶ 3(b)). The parties do not dispute that no additional wells have been drilled on the Premises since the primary term expired in 1926 and that the payment of delay rentals long ago ended.

The Plaintiffs are now the owners of several tracts of land by way of a deed executed on May 6, 2009, including the Premises. EXCO is the assignee and successor-in-interest to the Grantee to the Lease pursuant to an assignment and bill of sale from Hanley & Bird recorded in the Jefferson County Deed Book on April 13, 2011.

EXCO seeks to dismiss the claims asserted against it in the Amended Complaint on the basis that: (1) the Lease does not create any obligation for it to surrender any part of the Premises at this time; (2) the provisions of the Lease were never breached; and (3) the Lease contains express terms that override any implied duty to develop (including any duty to develop deeper wells) that might be owed to the Plaintiffs. The matter having been fully briefed and presented at oral argument, the motion to dismiss is now ripe for disposition.

## *II. LEGAL STANDARD*

In considering a Rule 12(b)(6) motion, federal courts require notice pleading, as opposed to the heightened standard of fact pleading. See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain

---

mailing to D.L. Koughner at the Post Office address hereinbefore given, or filing for record in the proper recording office, (either of which shall constitute legal delivery), a duly executed release thereof, all payments and liabilities thereafter to accrue shall cease and determine, except as to such portions of said premises that the Grantee shall retain; and the decision of the Grantee that the said premises or part thereof, does not warrant further investigation or development, shall be final and conclusive." Id.

4

statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds on which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)) (internal quotations omitted).

Building upon the landmark United States Supreme Court decisions in Twombly and Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937 (2009), our Court of Appeals recently explained that a district court must take three steps to determine the sufficiency of a complaint:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (internal citations omitted).

The third step of the sequential evaluation requires this Court to consider the specific nature of the claim(s) presented and to determine whether the facts pled to substantiate the claims are sufficient to show a "plausible claim for relief." See Iqbal, 129 S. Ct. at 1950. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

The Court may not dismiss a complaint merely because it appears unlikely or improbable that a plaintiff can prove the facts alleged or will ultimately prevail on the merits. Twombly, 550 U.S. at 556. Instead, the district court must ask whether the facts alleged raise a reasonable

expectation that discovery will reveal evidence of the necessary elements. Id. Generally speaking, a complaint that provides adequate facts to establish "how, when, and where" will survive a motion to dismiss. Fowler, 578 F.3d at 212; see also Guirguis v. Movers Specialty Services, Inc., 346 Fed. App'x 774, 776 (3d Cir. 2009). In short, a motion to dismiss should not be granted if a party alleges facts which could, if established at trial, entitle him to relief. Fowler, 578 F.3d at 213.

### *III. DISCUSSION*

*A.   Plaintiffs' Breach of Lease Claim*

In their Amended Complaint, the Plaintiffs seek a declaration that the Lease is cancelled with respect to 130 undeveloped acres of the 180-acre Premises and as to the deep strata of gas found below 3,500 feet from the Earth's surface. Plaintiffs also seek an order requiring EXCO to execute a release of the undeveloped acreage and the deep strata of gas beneath the Premises. In pursuing their breach of lease claim, the Plaintiffs essentially contend that EXCO, by failing – for more than 85 years – to "further investigate and develop" the Premises beyond the two (2) producing wells currently in operation, has necessarily made a determination under the Surrender Clause that the unused part of the Premises did not warrant such further investigation or development thereby requiring its reversion to Plaintiffs. (Complaint at ¶ 19). According to the Plaintiffs, EXCO's alleged failure to surrender the undeveloped portion of the Premises constituted a breach of the Lease. (Complaint at ¶20). EXCO in response contends that the Surrender Clause is purely for its benefit, and that there is no claim, nor can there be a claim, that it has ever declared (expressly or implicitly) that the unused portion of the Premises will not be the subject of "further" investigation or development.

The parties do not contest that Pennsylvania substantive law provides the rule of decision in this case. Other members of this Court have exhaustively detailed the contours of those legal norms in the context of gas leases, and we will not repeat them at length here, nor attempt to augment those excellent surveys of the law. See Penneco Pipeline Corp. v. Dominion Transmission, Inc., Nos. 2:05-cv-537 and 2:05-cv-049; 2007 WL 1847391 (W.D. Pa. June 25, 2007); Jacobs v. CNG Transmission Corp., 332 F.Supp. 2d 759 (W.D. Pa. 2004) ("(Federal) Jacobs").[4]

Oil and gas leases in Pennsylvania are treated as contracts and controlled by principles of contract law. See Penneco, 2007 WL 1847391, at *12 (citing Hutchison v. Sunbeam Coal Corp., 519 A.2d 385, 389-90 (Pa. 1986)); Willison v. Consolidated Coal Co., 637 A.2d 979, 982 (Pa. 1994). In order to maintain a breach of contract action, the plaintiff must prove that: (a) a contract exists; (b) a duty imposed by the contract was breached; and (c) damages resulted from the breach. Braun v. Wal-Mart Stores, Inc., 24 A.3d 875, 896, 2011 PA Super 121 (Pa. Super. Ct. 2011).

The Plaintiffs rely upon the Surrender Clause for the relief they seek on their breach of lease claims in this case.[5] Plaintiffs have not alleged that EXCO ever announced its affirmative determination that all or part of the Premises did not warrant "further" investigation and development. Instead, relying upon a reading of the Surrender Clause that focuses on the actions

---

[4] The Jacobs case has consumed a substantial measure of state and federal judicial attention. Memorandum Opinion (Doc. No. 31), Civ. No. 96-319 (W.D. Pa. Sept. 22, 1997); Certification Order, No. 98-3537 (3d Cir. July 13, 1999); on Certification, Jacobs v. CNG Transmission Corp., 772 A.2d 445 (Pa. 2001); Post-Certification, 281 F.3d 221 (3d Cir. 2001); Opinion on Remand, 332 F. Supp. 2d 759 (W.D. Pa. 2004). For clarity, the Pennsylvania Supreme Court's opinion is referenced as "(State) Jacobs," and the 2004 opinion of Judge Cercone in this Court as "(Federal) Jacobs."

[5] While EXCO puts forth considerable effort in showing the Court that it fulfilled the Development Clause by its development of the two (2) producing wells, that argument does not conclude the analysis of Plaintiffs' claims; Plaintiffs seemingly concede that the Development Clause has been fulfilled, and the pleadings make it plain that the Grantee completed four (4) wells during the primary term of the Lease and two (2) producing wells now remain on the Premises.

(or inactions) of EXCO and its predecessors, the Plaintiffs argue that the Court should determine and declare that EXCO's persistent lack of use, investigation, or development of the untouched portion of the Premises (for nearly a century) necessarily amounts to its determination that such segment of the Premises will not be "further" investigated or developed. Therefore, according to the Plaintiffs, such inaction triggers EXCO's duty under the Lease to surrender[6] and release the unused portion of the Premises.

Oil and gas leases have acquired a certain specialized construction within a "highly technical and well-developed industry," Hite v. Falcon Partners, 13 A.3d 942, 945, 201 PA Super 2 (Pa. Super. Ct. 2011), and relevant interpretive principles applicable have evolved. First, leases where payments are based on production royalties (the situation now existing here) are to be construed so as to promote the "full and diligent" development of the leasehold for the benefit of both parties. Hite, 13 A.3d at 945 (quoting (Federal) Jacobs, 332 F.Supp. 2d at 781). Second, a lease will not be construed so as to create a perpetual term, unless that is the clear and unequivocal intention of the parties. Sterle v. Galiardi Coal & Coke Co., 77 A.2d 669, 672 (Pa. Super. Ct. 1951). Further, the intention of the parties at the time the lease was formed controls. Penneco, 2007 WL 1847391, at *2; J.K. Willison, Jr. v. Consolidation Coal Co., 637 A.2d 979 (Pa. 1994); Stewart v. Chernicky, 266 A.2d 259, 263 (Pa. 1970). Finally, we are cautioned that

---

[6] Notably, under Pennsylvania law dealing with common law abandonment, "a party must show an intentional relinquishment of rights." Penneco, 2007 WL 1847391, at *19 (citing Girolami v. Peoples Natural Gas Co., 76 A.2d 375, 378 (Pa. 1950)). In addition, the intention to relinquish rights must accompany some external acts by which the intent to relinquish is carried out. Id. (citing MacCurdy v. Lindey, 37 A.2d 514, 516 (Pa. 1944)). Thus, mere nonuse or nondevelopment of a portion of a lease does not constitute abandonment. Id. That said, Pennsylvania courts have also held that when considering abandonment in the context of oil and gas leases, there arises a fair presumption of abandonment that, unless rebutted, justifies a declaration of abandonment as a matter of law, when there is an unexplained cessation in operations for an unreasonable length of time, a failure to pursue development with reasonable diligence and in the usual course of business, or drilling of one well over an extended period of time coupled with a declaration that the lessee did not intend to further develop the premises. (Federal) Jacobs, 332 F. Supp. 2d at 796 (citing Aye v. Philadelphia Co., 44 A. 555, 556; Calhoon v. Neely, 50 A. 967, 968-69 (Pa. 1902); and Clark v. Wright, 166 A. 775, 778 (Pa. 1933) 166 A. at 778); see also Penneco, 2007 WL 1847391, at *20, n.51 (citing Highfield Co. v. Kirk, 93 A. 815, 816-17 (Pa. 1915)).

given the long and detailed development of the law in this arena, care must be taken that in its application, long-established expectations of the parties to the interpretation of such leases should not be lightly disturbed. See Hoffman v. Arcelormittal Pristine Resources, No. 11-cv-0322, 2011 WL 1791709, *1 (W.D. Pa. May 10, 2011). It is in this legal context that we consider the specific lease provisions involved in this case, and the factual allegations of Plaintiffs' Amended Complaint.

In the Amended Complaint, the Plaintiffs allege that neither EXCO nor its predecessors-in-interest have drilled new wells on the Premises since the expiration of the primary term in 1926. For over 85 years, the leaseholders have enjoyed the exclusive drilling rights on 180 acres of the Premises while only operating (in a minimal fashion) on approximately 50 acres needed for the two (2) currently producing wells.

According to EXCO, the Lease's Development Clause obligated the Grantee to drill a minimum of two (2) wells (and to pay delay rentals until it did), but did not obligate it to conduct further development. If that were as far as the issue went, the Plaintiffs' claims might lose vitality.[7] However, the Surrender Clause, which follows the Development Clause in sequence within the Lease, expressly contemplates the Grantee either engaging in "further" investigation and development of all or a part of the Premises, or if it declines to do so, returning to the Grantor the rights to those parts of the Premises upon which further investigation and development would be foregone. We must consider the express language of this Lease, by which the parties speak to "further" investigation and development after the initial primary term wells were drilled, in the context of nearly nine (9) decades of alleged developmental inaction.

---

[7] Unlike the factual scenario in Penneco, in which the defendants' lease rights were held to continue in the absence of further development due to their non-severable right to use the leased premises for storage of gas only, Penneco, 2007 WL 1847391, at *17, *25, the Lease here does not provide for such storage-only alternative use.

9

This inquiry is also within the context of well-settled Pennsylvania law, which expressly favors a contractual interpretation that fosters development and production for the mutual benefit of the parties and disfavors an interpretation of the Lease that would create an implicit non-producing fee simple interest in a grantee. (Federal) Jacobs, 332 F. Supp. 2d at 789-92.[8]

For purposes of asserting a claim for breach of the Surrender Clause of the Lease, the facts pled regarding this failure to drill for further production on the Premises (or to take any other steps arguably constituting "further" investigation or development) are sufficient at this point to permit, but not necessarily compel, a finding that EXCO, by its inaction, has necessarily made a determination that the undeveloped segment of the Premises did not warrant any further exploration or investigation. Taken as true, as we must at this juncture, the Court is satisfied that the facts alleged by the Plaintiffs give rise to a plausible theory of recovery under the breach of lease claim. The Court simply cannot say that the allegations as pled do not state a plausible claim for relief, and the Motion to Dismiss the claim for breach of contract will be denied.

B.  *Plaintiffs' Breach of Implied Covenants Claims*

The Plaintiffs also contend that EXCO had an implied obligation to develop the Premises in furtherance of the production of oil and gas once the Lease's primary term expired in 1926. This duty, according to the Plaintiffs, applies horizontally (i.e., as to more acreage covered on the Premises) as well as vertically (i.e., to develop deeper wells). Plaintiffs maintain that because EXCO failed to fully or further develop the Premises, the Lease should be deemed cancelled with respect to the undeveloped acreage.

---

[8] EXCO focuses on the language of the Surrender Clause that reserves to the Grantee the exclusive authority to make the determination as to whether further investigation and development will occur. This focus, however, fails to take into account the thrust of Plaintiffs' breach of lease argument – that EXCO and its predecessors have, in fact, made such determination by their failure to investigate and develop for decades.

10

Pennsylvania courts have recognized an implied duty to develop and produce oil and gas leaseholds for more than 100 years. Jacobs v. CNG Transmission Corp., 772 A.2d 445, 452 (Pa. 2001) ("(State) Jacobs"). Where the compensation to the landowner is based solely upon royalty payments from producing wells (even where there was an initial period in which "delay rentals"[9] were paid), such duty requires a lessee to develop a leasehold appropriately. Id. at 454. During the time in which a lessee pays delay rentals for the option to develop the leased premises, the implied duty to drill more wells does not apply. Id. at 455. Once the payment of delay rentals ceases (as is the case here) due to either the expiration of the lease or through the operation of the lease provisions, "the lessee has an affirmative obligation either to develop and produce the oil or gas or terminate the landowner's contractual obligations." Id. Other courts have stated the rule as requiring lessees to develop the property with reasonable diligence. (Federal) Jacobs, 332 F. Supp.2d 759, 792-93 (citing Aye, at 455-56).

In the instant case, the Grantee was required to pay the Grantors delay rental payments in the amount of $0.25/acre for the entire Premises for every three months that the production of the first well was delayed. Once the first producing well was completed, the delay rentals only applied to ninety (90) acres of the Premises until a second producing well was completed. However, the Grantee's obligation to pay delay rentals ceased once the second well was completed, and the Grantors were then to be compensated solely in production royalties for each of the wells going forward. Plaintiffs allege, and EXCO concedes, that the Plaintiffs receive only production royalty payments for the two (2) existing wells. Moreover, Plaintiffs specifically aver that: (a) they are not currently receiving, and have not been paid, delay rentals

---

[9] Delay rental clauses are understood to be operative during the primary term of an oil and gas lease. (Federal) Jacobs, 332 F.Supp.2d at 786 (citing 3 Williams and Meyers, OIL AND GAS LAW § 605; Bertani v. Beck, 479 A.2d 539, 537 (Pa. Super. Ct. 1984), 479 A.2d at 537; and THE LAW OF OIL AND GAS §§ 334, 385 & 397).

11

that may justify the postponement of any further development; and (b) EXCO and the predecessor intermediary leaseholders each failed to take any steps to further develop the Premises beyond the expiration of the primary term of the Lease.

EXCO argues that the implied duty to fully develop oil and gas leaseholds is inapplicable here for two reasons. First, according to EXCO, Plaintiffs are receiving compensation in the nature of "minimum well" production royalties. (ECF No. 15, at 2) Second, according to EXCO, the parties to the Lease, by providing that two (2) wells were to be drilled during the primary term, expressly stated the full expanse of their development obligations in the terms of the Lease, leaving no room for any further duty implied by law. Citing to (State) Jacobs, 772 A.2d at 455, and Penneco, 2007 WL 1847391, at * 17-18, EXCO claims that the Plaintiffs' receipt of compensation in lieu of production royalties, in the form of delay rentals and "minimum-well rentals," obviates any such implied covenant.

As we have stated above, the Court must take the facts alleged by the Plaintiffs, as the non-moving party, as true. Plaintiffs aver that the only compensation that they now receive (or have any right to receive) is in the form of production royalties, an assertion that appears to be consistent with the Lease because it is undisputed that the Development Clause conditions were satisfied within the primary term of the Lease more than eighty (80) years ago. Thus, the Development Clause provisions no longer serve to bar the application of the implied duty. (State) Jacobs, 772 A.2d at 485.[10]

EXCO next argues that because it interprets the Lease as specifying that a minimum of two (2) wells were to be drilled during the primary term, the holding in Stoddard v. Emery, 18 A.

---

[10] In this regard, Penneco is distinguishable because in that case, rentals (as opposed to royalties) were paid to secure non-severable storage rights, taking the case outside of the rule as stated by the Pennsylvania Supreme Court in (State) Jacobs. Penneco, 2007 WL 1847391, at *19, *25.

12

339 (Pa. 1889), requires this Court to disregard any implied duty to further develop the Premises. In <u>Stoddard</u>, the Pennsylvania Supreme Court held that where the number of wells to be drilled is specified by the Lease, that number controls and no implied covenant to develop further can be read into the Lease. <u>Stoddard</u>, 18 A. at 339. The Development Clause here does not forever fix the number of wells to be drilled, but only alters the compensation to be paid after the first two (2) wells are drilled and produce paying quantities of oil and/or gas. The Surrender Clause's express contemplation of "further" investigation and development precludes a conclusion at this stage of the proceedings that the number of wells, or the scope of the ultimate development, was expressly set and limited by the parties to two (2) wells at the time the Lease was agreed to. Thus, to the extent <u>Stoddard</u> retains vitality, its holding does not foreclose the Plaintiffs' claim based on the facts alleged and the specific language of the Lease itself.

Furthermore, the Court is satisfied that the Supreme Court of Pennsylvania, in answering a question certified to it by our Court of Appeals in the <u>Jacobs</u> lineage, has recognized such an implied duty could apply to the facts alleged here. The (State) <u>Jacobs</u> court noted that the reasoning of <u>Hutchison</u>, 519 A.2d 385, 388-89 (Pa. 1986), in which that same court held that an implied duty to mine was based upon the compensation paid to the lessor, is "sound and consistent with our jurisprudence preceding it," ultimately answering the certified question from our Court of Appeals as follows:

> . . . An implied covenant to develop the underground resources appropriately exists where the only compensation to the landowner contemplated in the lease is royalty payments resulting from the extraction of that underground resource. Where, however, the parties have expressly agreed that the landowner shall be compensated if the lessee does not actively extract the resource, then the lessee has no implied obligation to engage in extraction activities. Thus, so long as the lessee continues to pay the landowner for the opportunity to develop and produce oil or gas, the lessee need not actually drill wells. *At the point where that*

> *compensation ceases due to the expiration of the term of the lease, or pursuant* [sic] *the terms of the lease itself, the lessee then has an affirmative obligation either to develop and produce the oil or gas or terminate the landowner's contractual obligations.* As this Court stated in <u>McKnight v. Manufacturers' Natural Gas Co.</u>, 146 Pa. 185, 294, 23 A. 164, 166 (1892): "The defendant cannot hold the premises and refuse to operate them."

<u>(State) Jacobs</u>, 772 A.2d at 455 (emphasis added); <u>see also</u> <u>Penneco</u>, 2007 WL 1847391, at *17.

Finally, EXCO argues that the Court should dismiss the Plaintiffs' claims alleging that EXCO breached the implied duty to develop the Premises by failing to drill producing wells beyond the 3,500-foot substrata. As EXCO correctly notes, another member of this Court has held that a conveyance of "all the oil and gas" means "all gas," including subsurface gas and deep substrata gas. See <u>Hoffmann</u>, 2011 WL 1791709, at *6 (W.D. Pa. May 10, 2011). Here, the Lease conveys all of the oil and gas beneath the Premises to the Grantee. While the Plaintiffs cite no case law or other authority for the proposition that the implied duty to develop an oil and gas leasehold applies vertically to the depth of wells, our inquiry here focuses solely on the sufficiency of the Amended Complaint. Having held that the Plaintiffs state a plausible theory of recovery based on an implied duty to further develop an oil and gas leasehold, the Court need not address the scope and contours of that duty at this early stage of the pleadings.

To be clear, at this stage, we need only resolve the threshold question of whether the allegations of the Amended Complaint, in the specific context of this Lease's provisions and the facts pled, survive EXCO's Motion to Dismiss, allowing the case to proceed further. The parties' engagement in the discovery process will determine if there is a legally sufficient factual

predicate[11] for the ultimate assessment of liability against EXCO on the claims brought by the Plaintiffs.

                                                                                                                               _____
                                                                                                                               Mark R. Hornak
                                                                                                                               United States District Judge

Dated: March 26, 2012

cc:    All Counsel of Record

---

[11] Contrary to EXCO's protestations that Plaintiffs' claims are novel or wholly misinformed (ECF Doc. No. 15, at 3-6), they appear to the Court to be based on the specific language of the Lease, the facts alleged as to the decades of inaction by any grantee, and the essentially straightforward application of the analysis in both (State) Jacobs and (Federal) Jacobs, and are not inconsistent with Penneco for the reasons stated. Whether these claims will survive a motion for summary judgment based on a more fully-developed record is a matter for another day.

15