IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE DELMAS RAY BURKETT, II REVOCABLE TRUST, by DELMAS RAY BURKETT, II, TRUSTEE, and THE SHELDON JAY BURKETT REVOCABLE TRUST, by SHELDON JAY BURKETT, TRUSTEE,<br>Plaintiffs,<br><br>vs.<br><br>EXCO RESOURCES (PA), LLC,<br>Defendant. | Civil Action No. 2:11-cv-1394<br><br>Judge Mark R. Hornak |

## OPINION

**Mark R. Hornak, United States District Judge**

This case involves an oil and gas lease dispute in which Plaintiffs, The Delmas Ray Burkett, II Revocable Trust, by Delmas Ray Burkett, II, Trustee, and The Sheldon Jay Burkett Revocable Trust, by Sheldon Jay Burkett, Trustee, seek a declaration that the parties' lease is cancelled with respect to 130 allegedly undeveloped acres of the 180-acre leasehold because Defendant EXCO Resources (PA), LLC ("EXCO") allegedly breached both a duty to surrender those 130 undeveloped acres and an implied duty to develop the entire leased premises.

Before the Court are the parties' motions for summary judgment: Plaintiffs' Partial Motion for Summary Judgment, ECF No. 34, and Defendant's Cross Motion for Summary Judgment, ECF No. 43. The matter has been fully briefed and the parties' Motions are now ripe for disposition. For the following reasons, Plaintiffs' Partial Motion is denied, and Defendant's Motion is granted.

# I. BACKGROUND

The relevant material facts are undisputed. Plaintiffs are the owners of several tracts of land in Jefferson County, Pennsylvania, by virtue of a recorded deed dated May 6, 2009. Pls.' Stat. Facts in Supp. of Pls.' Mot. for Partial Summ. J. ("Pls.' Stat. Facts") ¶ 2. Plaintiffs' ownership interest in Parcel No. 1 in that deed includes all oil and gas rights, which are subject to the lease at issue ("the Lease"). *Id.* at ¶ 3. The Lease was entered into on or about July 13, 1916, and was recorded on August 14, 1919 in Jefferson County. *Id.* at ¶ 5. The Lease gives the Lessee exclusive rights to drill for oil and gas under an 180-acre tract in Oliver Township, Jefferson County, Pennsylvania ("the Premises"). *Id.* at ¶ 6.

Plaintiffs are the current owners of the Premises and are the successors-in-interest to the Grantors/Lessors under the 1916 Lease. *Id.* at ¶ 18. Defendant EXCO is the assignee and successor-in-interest to the Grantee/Lessee, and currently has operating rights under the 1916 Lease. *Id.* at ¶ 19. EXCO acquired its current title to all rights via an Assignment/Bill of Sale from Hanley & Bird, recorded April 13, 2011, in Jefferson County. Def.'s Ex. D. The stated "sole and only purpose" of the Lease is "drilling and operating [the Premises] for said oil and gas and removing the same therefrom." Pls.' Stat. Facts ¶ 7. The Lease contains extensive provisions for forfeiture and delay rentals during the primary term. *Id.* at ¶ 8. The Lease's Development Clause is not at issue, and the parties agree that the terms applicable to the primary term of ten years have been satisfied. *Id.*

Prior to the expiration of the primary term in 1926, the Lessee completed two wells in accordance with the Development Clause. *Id.* at ¶ 11. Thereafter, the Lease was to extend for an indefinite secondary term for a period "as much longer as the said premises are being drilled or operated for the production of oil or gas, or as oil or gas is found or produced in paying

2

quantities thereon." *Id.* This provision is known as the Habendum Clause. *Id.* Under the Lease, the Lessor is to be paid a one-eighth (1/8) royalty during the secondary term from production of oil and/or fixed per-well rental for gas production. *Id.* at ¶ 10.

By recorded agreement dated July 1, 1959 ("the 1959 Agreement"), then successor-Lessors (G. Raymond Coon, et ux.) and successor-Lessee (Hanley & Bird), faced with two abandoned wells and only three "old and very small" remaining wells, amended the 1916 Lease with respect to its provisions regarding per-well rental rates, free gas for the Lessor, and exactly which well rental rate would apply "should any other well or wells be drilled" on the Premises. *Id.* at ¶ 16; Def.'s Ex. B.

The 1959 Agreement states that a total of five (5) wells were in fact drilled on the Premises. *See* Def.'s Ex. B. One provided free gas to the Grantors for their residential use (and was abandoned by July 1959), one was plugged and abandoned in February 1949, and three were in operation at the time the 1959 Agreement was executed. *Id.* Currently, there are two (2) producing wells remaining on the Premises – both drilled during or shortly after the primary lease term. Pls.' Stat. Facts ¶¶ 13, 20. No additional wells have been drilled on the Premises since at least 1927. *Id.* The parties agree that the Lease continued under the Habendum Clause (the secondary term) because the two wells continued to be operated for the next 85 years. *Id.* at ¶ 14.

The 1916 Lease contains a clause providing for surrender and release of undeveloped acreage ("the Surrender Clause"), setting forth that:

> IT IS AGREED, that if at any time or times the Grantee shall determine that said premises, or any part thereof, does not warrant further investigation or development, the Grantee shall thereupon surrender and cancel this grant, either as a whole or as to such part of the premises hereinbefore described, as does not warrant further investigation or development; and upon delivering direct to [the Lessors] . . . a duly executed release thereof, all payments and liabilities thereafter

3

> to accrue shall cease and determine, except as to such portions of said premises that the Grantee shall retain; and the decision of the Grantee that the said premises, or part thereof, does not warrant further investigation or development, shall be final and conclusive.

*Id.* at ¶ 21; Def.'s Ex. A.

Plaintiffs brought this action in the Court of Common Pleas of Jefferson County, Pennsylvania, alleging under Count I, "Breach of Lease," and under Count II, "Breach of Implied Covenants." In their Amended Complaint for Declaratory Judgment ("Amended Complaint"), Plaintiffs seek a declaration that the 1916 Lease is partially cancelled because Defendant EXCO (1) breached the Surrender Clause of the Lease by having implicitly made a determination that 130 undeveloped acres of the Premises did not warrant further investigation or development without having released that undeveloped acreage; and (2) that EXCO breached implied covenants to fully develop the Premises, both as to depth and as to acreage. EXCO removed the case to this Court on diversity grounds and shortly thereafter, pursuant to Federal Rule of Civil Procedure 12(b)(6), moved to dismiss the Amended Complaint for failure to state a claim upon which relief may be granted. This Court denied Defendant's Motion. *See Delmas Ray Burkett, II Revocable Trust ex rel. Burkett v. Exco Res. (Pa), LLC*, 2:11-CV-1394, 2012 WL 1019025 (W.D. Pa. Mar. 26, 2012) ("*Delmas I*").

## II. **DISCUSSION**

### a. Standard of Review

The standard for summary judgment in a declaratory judgment action is the same as for any other type of relief. *Pellegrino Food Products Co., Inc. v. Am. Auto. Ins. Co.*, 655 F. Supp. 2d 569, 574-75 (W.D. Pa. 2008) (citing *Transguard Ins. Co. of America, Inc. v. Hinchey*, 464 F. Supp. 2d 425 (M.D. Pa. 2006) (citing *Cloverland-Green Spring Dairies, Inc. v. Pa. Milk Marketing Board*, 298 F.3d 201, 210 n. 12 (3d Cir. 2002))). Summary judgment is appropriate

4

when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The parties must support their position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c) (1)(A).

Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a *genuine issue for trial*," or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) (quoting Fed. R. Civ. P. 56(a), (e)) (emphasis in *Matsushita*). In meeting its burden of proof, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The non-moving party "must present affirmative evidence in order to defeat a properly supported motion" and cannot "simply reassert factually unsupported allegations." *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989). If the non-moving party's evidence merely is colorable or lacks sufficient probative force, summary judgment must be granted. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 249-50 (1986).

In other words, summary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party. *See id.* at 250. "Where the record taken as a whole could not lead a reasonable trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587; *Huston v. Procter & Gamble Paper Products Corp.*, 568 F.3d 100, 104 (3d Cir. 2009).

In reviewing the record evidence, the court draws all reasonable inferences in favor of the non-moving party. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Matsushita*, 475 U.S. at 587–88; *Huston*, 568 F.3d at 104 (citations omitted). It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. *See Anderson*, 477 U.S. at 255; *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004); *Boyle v. Cnty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247–48. "Where the defendant is the moving party, the initial burden is on the defendant to show that the plaintiff has failed to establish one or more essential elements to his case." *See Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 589 (3d Cir. 2005) (citing *Celotex Corp.*, 477 U.S. at 323–24).

In cases such as this, where cross motions for summary judgment have been filed, each party essentially contends that no genuine issue of material fact exists from its particular point of view. The Court should, therefore, consider each motion for summary judgment separately. *Home for Crippled Children v. Prudential Insurance Co.*, 590 F. Supp. 1490, 1495 (W.D. Pa. 1984). Because each party is moving for summary judgment, each party bears the burden of establishing a lack of genuine issues of material fact. *See id.* Such inherently contradictory claims do "not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives ... determination [of] whether genuine issues of material fact exist." *Rains v. Cascade Industries, Inc.*, 402 F.2d 241, 245 (3d Cir. 1968). Moreover, the standards under which a court grants or denies summary judgment do not change by virtue of cross motions being presented. *Home for Crippled Children*, 590 F. Supp. at 1495. With these principles in mind, the Court will embark on its consideration of the parties' Motions.

### b. Count I – Breach of Lease

Plaintiffs move for summary judgment only as to Count I of their Amended Complaint, "Breach of Lease." Pls.' Mot. for Partial Summ. J. ("Pls.' Mot.") ¶ 1, while Defendant moves for summary judgment as to both Counts I and II of Plaintiffs' Amended Complaint, Def.'s Cross-Mot. for Summ. J. ¶ 2. As to Count I, Plaintiffs aver that the Surrender Clause requires EXCO to either fully develop the leased premises or surrender the undeveloped portion. Pls.' Br. in Supp. at 6. According to Plaintiffs, EXCO breached the parties' Lease when it implicitly decided against further development of the 180-acre Premises by deciding not to drill any other wells on the Premises after 1927, and then not acting on its "express duty" under the Surrender Clause to surrender and release the acreage it had necessarily decided not to develop. *Id.* at ¶ 12. Inherent in Plaintiffs' argument is a contention that by inaction as to further drilling, Defendant had, in reality, "surrendered" its interest in a rather amorphously defined 130 acres of the involved parcel.

EXCO counters that Plaintiffs, by failing to discuss the 1959 Agreement that amended the 1916 Lease, incorrectly assume that all express and implied terms of the 1916 Lease are still in effect, when the reality is that the 1959 Agreement "supersedes and amends certain terms of the Lease, including any alleged duty to surrender a portion of the Premises." Def.'s Mem. in Supp. of Cross-Mot. for Summ. J. ("Def.'s Mem.") at 15.

Oil and gas leases in Pennsylvania are treated as contracts and controlled by principles of contract law. *See Penneco*, 2007 WL 1847391, at *12 (citing *Hutchison v. Sunbeam Coal Corp.*, 519 A.2d 385, 389–90 (Pa. 1986)). In order to maintain a breach of contract action, the plaintiff must prove that: (a) a contract exists; (b) a duty imposed by the contract was breached; and (c)

damages resulted from the breach. *Braun v. Wal–Mart Stores, Inc.*, 24 A.3d 875, 896 (Pa. Super. Ct. 2011).

A contract "is to be construed in accordance with the terms of the agreement as manifestly expressed." *Willison v. Consolidated Coal Co.*, 637 A.2d 979, 982 (Pa. 1994) (internal citation omitted). When the terms of a written agreement are clear and unambiguous, its meaning must be determined by its contents alone, *Hutchison v. Sunbeam Coal Corp.*, 519 A.2d 385, 390 (Pa. 1986), and the task of interpreting a contract is properly performed by a court, rather than a jury, *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983). The surrender clause was introduced to oil and gas leases to give "the lessee the ability to end his obligations on property that proved to be unproductive prior to the expiration of the definite term." *Jacobs v. CNG Transmission Corp.*, 332 F. Supp. 2d 759, 786 n. 15 (W.D. Pa. 2004) ("*Federal Jacobs*").[1]

Here, the Surrender Clause at issue provides,

> IT IS AGREED, that *if at any time or times the Grantee shall determine that the said premises, or any part thereof, does not warrant further investigation or development, the Grantee shall thereupon surrender and cancel this grant*, either as a whole or as to such part of the premises hereinbefore described, as does not warrant further investigation or development; and upon delivering direct to the Grantors, or either of them, or mailing to [Kougher] at the Post Office address hereinbefore given, or filing for record in the proper recording office, (either of which shall constitute a legal delivery), a duly executed release thereof, all payments and liabilities thereafter to accrue shall cease and determine, except as to such portions of said premises that the Grantee shall retain; and the decision of the Grantee that the said premises, or part thereof, does not warrant further investigation or development, shall be final and conclusive.

---

[1] The "surrender clause, giving the lessee the power to surrender the lease and thereby escape his duties to the lessor," is, along with the drilling clause, the delay rental clause, and the forfeiture clause, an "inherently component part[] of a general scheme to secure the testing, development and operation of the demised land for oil and gas through the creation of an aggregate of legal relations designed to be fair to both parties to the contract." 2 Summers Oil and Gas § 15:1 (3d ed.).

8

The 1916 Lease, ECF No. 46 at 4 (emphasis added). By its terms, the parties' Lease requires that EXCO as the Grantee/Lessee "shall thereupon surrender and cancel this grant," in whole or in part, "if at any time or times" EXCO as the Grantee/Lessee "determine[s] that the said premises, or any part thereof, does not warrant further investigation or development." *See id.* There is no indication in the record, as Plaintiffs concede, that EXCO or its predecessors "ever formally announced its affirmative decision that all or part of the Premises did not warrant further investigation or development." Pls.' Br. in Supp. at 8. Indeed, this concession forms the crux of EXCO's argument that even without considering the 1959 Agreement (which was not before this Court at the time of the Court's ruling in *Delmas I*), EXCO is still entitled to summary judgment on Count I because a lessor cannot use a surrender clause "offensively" to cause the recognition of an implicit surrender by the conduct of the lessee. Def.'s Mem. at 18.

However, as this Court noted in *Delmas I*, "EXCO focuses on the language of the Surrender Clause that reserves to the Grantee the exclusive authority to make the determination as to whether further investigation and development will occur. This focus, however, fails to take into account the thrust of Plaintiffs' breach of lease argument – that EXCO and its predecessors have, in fact, made such determination by their failure to investigate and develop for decades." *Delmas I*, 2012 WL 1019025, at *5 n. 8. The record is clear and undisputed that only two producing wells remain on the Premises, drilled during or shortly after the primary term, and no additional wells have been drilled on the Premises since at least 1927. Def.'s Stat. Facts ¶ 13 ("EXCO admits that this fact is undisputed and material."). However, this Court need not reach a determination as to whether EXCO or its predecessors did, in fact, make an implicit determination, by their 85 years of inaction, that those 130 undeveloped acres did not warrant further development because the 1959 Agreement, to the extent of its express terms, modified the

1916 Lease such that in effect it "rebooted the hard drive" and reset EXCO's duties under the Lease of over 40 years prior.

Under Pennsylvania law, "where several instruments are made as part of one transaction, they will be read together and each will be construed with reference to the other, . . . although the instruments may have been executed at different times." *Giant Food Stores, LLC v. THF Silver Spring Dev., L.P.*, 959 A.2d 438, 445 (Pa. Super. Ct. 2008) (internal citation omitted); *see also Betterman v. Am. Stores Co.*, 80 A.2d 66, 71 (Pa. 1951) ("It is an elementary proposition that any contract can be modified with the assent of both contracting parties, provided, of course, the modification does not conflict with law or public policy."). Furthermore, "[w]hen the language of a contract is clear, the contract speaks for itself and meaning cannot be given to it other than expressed." *Welteroth v. Harvey*, 912 A.2d 863, 866 (Pa. Super. Ct. 2006) (internal citation omitted). Indeed, "[i]t is well established that the intent of the parties to a written contract is to be regarded as being embodied in the writing itself, and when the words are clear and unambiguous the intent is to be discovered only from the express language of the agreement." *Steuart v. McChesney*, 444 A.2d 659, 661 (Pa. 1982) (internal citation omitted).

Here, the 1959 Agreement (the authenticity and effect of which the parties do not contest) provides in pertinent part that "*[s]hould any other well or wells be drilled on the said 180 A. tract*, the well rental is to be as called for in the original leasehold on the said tract." Def.'s Ex. B (emphasis added). At the time the parties' predecessors in interest entered into the 1959 Agreement, no wells had been drilled on the Premises for over thirty years, two out of the five wells drilled had been abandoned, and the remaining three wells were "old and very small." *See* Def.'s Ex. B. The 1959 Agreement in essence ratified the status quo of significantly dwindling production activity on the Premises by its amendment of the well-rental and free gas provisions

10

in light of that dwindling activity, and its further provision that "*should any other well or wells be drilled* on the said 180 A. tract," then the well rental was to be calculated as set forth in the 1916 Lease. *Id.* (emphasis added). This latter provision underscores the parties' express contemplation that the Grantee/Lessee might not pursue any further development (although the Grantee could do so if it chose to), such that, even if Plaintiffs' "implied surrender" argument were recognized as to solely the 1916 Lease, the Lessee's determination in this case not to further develop the Premises no longer *per se* required the Lessee to surrender the Lease, given the expressly conditional phrasing of this 1959 provision.

Thus, reading the 1959 Agreement together with the 1916 Lease, and considering the parties' 1959 provision allowing for, but not plainly requiring, the drilling of more wells, and the parties' ratification of the status quo of modest production activity on the Premises, the record evidence demonstrates that EXCO and its predecessors, as the Grantee/Lessee, could no longer have an implied duty under the Surrender Clause to release undeveloped acreage if they refrained from further development, since the language chosen by the parties in the 1959 Agreement expressly contemplated that it was possible that no further development would occur. Indeed, the conduct of Plaintiffs and Plaintiffs' predecessors in interest in accepting royalty payments under the Lease for over 50 years since the 1959 Agreement (until December of 2012) further underscores the parties' ratification of the status quo presented to them at the time of that Agreement. Without an implied "duty to surrender" in light of the 1959 Agreement, Plaintiffs' Breach of Lease claim fails. *See Braun*, 24 A.3d at 896. Therefore, Defendant EXCO's Motion for Summary Judgment is granted as to Count I, "Breach of Lease."

### c. Count II - Breach of Implied Covenant to Develop

While Plaintiffs do not move for summary judgment on Count II, EXCO contends that it is entitled to summary judgment as to Count II, in which Plaintiffs have alleged that EXCO's inactivity on a large portion of the Premises for nearly a century constitutes a breach of the implied covenant to fully develop the leasehold. Pls.' Am. Compl. ¶¶ 22-32. Plaintiffs' "Breach of Implied Covenants" claim relates to two portions of the Premises: (1) acreage outside the 25 to 30 acres allegedly drained by each currently-producing well; and (2) the entire Premises at depths of 3,500 feet or greater.[2]

Regarding this latter portion, since the filing of the parties' Motions, the Pennsylvania Superior Court has held that lessees have no implied duty to drill to different depths to completely develop and economically exploit all strata of gas. *Caldwell v. Kriebel Res. Co., LLC*, 72 A.3d 611, 615 (Pa. Super. Ct. 2013) *appeal denied*, 81 A.3d 74 (Pa. 2013). The appellants in *Caldwell*, like the Plaintiffs here, were "[w]ithout a Pennsylvania case to rely on that provides for a duty to economically exploit all strata of gas," and attempted to direct the Superior Court to adopt a standard requiring lessees "to develop all economically exploitable strata or . . . hold that the duty to develop is attached to each strata of the gas." *Id.* at 615.

Like the parties here, the parties in *Caldwell* were operating under the habendum clause of their agreement, which provided that the agreement would be extended beyond the primary term "so long as oil or gas was being produced," and the drilling activities to date had only involved shallow gas drilling. *Caldwell*, 72 A.3d at 613. The *Caldwell* court concluded that "under Pennsylvania law, we are not authorized to impose an implied duty on the lessee to

---

[2] As to this latter portion of the Premises, Plaintiffs aver in their Partial Motion for Summary Judgment that "[a]t this pre-trial phase, the actual record has not been fully developed with respect to deep drilling potentials, and Pennsylvania law is too uncertain in this area," so they are not moving for summary judgment as to their claim in Count II for an alleged "implied duty to explore and develop deeper gas horizons." Pls.' Mot. ¶ 1 n.1.

12

develop the various strata in light of the language contained in their contract." *Id.* at 615; *see also Hutchison v. Sunbeam Coal Corp.*, 519 A.2d 385, 388 (Pa. 1986) ("The law will not imply a different contract than that which the parties have expressly adopted.").

While here, the 1916 Lease and the 1959 Agreement do not contain the provision like the lease in *Caldwell*, mandating that "[n]o inference or covenant shall be implied as to either party hereto since the full contractual obligations and covenants of each party [are] fully and expressly set forth," *id.*, the reality is that the law does not imply a different contract than that which the parties *here* have expressly adopted, which provides that if the drilling requirements for the primary term are satisfied (as the parties here so stipulate), the Lease will extend for an indefinite secondary term for a period "as much longer as the said premises are being drilled or operated for the production of oil or gas, or as oil or gas is found or produced in paying quantities thereon." Def.'s Stat. Facts ¶ 9. No mention is made in the Lease or Agreement of any duty to drill or operate "all strata" for the production of gas, or to find or produce gas from all strata "in paying quantities." Pennsylvania courts have not previously recognized an implied covenant to completely develop "all strata" of the leased premises in an oil and gas lease, the Pennsylvania Superior Court likewise declined to do so in 2013 in *Caldwell*, and this Court accordingly declines to conclude that Pennsylvania law provides for an implied duty to economically exploit "all strata" of gas.

As for the remainder of Plaintiffs' Count II implied covenant claim that relates to the acreage outside of the 50 acres allegedly drained by the only two currently-producing wells, EXCO contends that, in light of the express terms of the 1959 Agreement, the implied covenant of development does not apply to EXCO's production on the Premises, and even if the implied covenant does apply, the covenant has been satisfied in this case because, even with no new

13

wells drilled since 1927, "the entire Premises was thoroughly developed [by the five wells drilled] and that there is no 'untouched' or 'undeveloped' acreage." Def.'s Mem. at 27.

Generally, "the title conveyed in an oil and gas lease is inchoate, and is initially for the purpose of exploration and development." *T.W. Phillips Gas and Oil Co. v. Jedlicka*, 42 A.3d 261, 267 (Pa. 2012) (internal citations omitted). "If development during the agreed upon primary term is unsuccessful, no estate vests in the lessee." *Id.* On the other hand, if "oil and gas is produced, a fee simple determinable is created in the lessee, and the lessee's right to extract the oil or gas becomes vested." *Id.* Here, as both parties recognize, the Lease is held by production, as "the terms of the Development Clause have been fulfilled and [] the Lease is currently in effect (under the habendum clause and perpetual second term) with respect to two functioning wells." Pls.' Br. in Supp. at 2; *see also* Def.'s Mem. at 13.

However, when an oil and gas lease is held by production, this status does not negate application of the implied covenant of development. As this Court recognized in *Delmas I*, "leases where payments are based on production royalties (the situation now existing here) are to be construed so as to promote the 'full and diligent' development of the leasehold for the benefit of both parties." *Delmas I*, 2012 WL 1019025, at *4 (quoting *Hite*, 13 A.3d at 945). Indeed, "it is a settled matter of public policy that the defendant cannot hold the premises and refuse to operate them." *Federal Jacobs*, 332 F. Supp. 2d at 783 (citing and quoting *Jacobs v. CNG Transmission Corp.*, 772 A.2d 445, 455 (Pa. 2001) ("*State Jacobs*").

"[A]n implied covenant to develop the leasehold appropriately exists where the compensation to the landowner is derived solely from royalty payments." *Federal Jacobs*, 332 F. Supp. 2d at 784. However, the Pennsylvania Supreme Court in *State Jacobs* answered the question certified to it by the Third Circuit by holding that "Pennsylvania law recognizes an

14

implied covenant but also recognizes that the specific agreement of the parties may preclude the application of the doctrine." *State Jacobs*, 772 A.2d at 453 (citing *Stoddard v. Emery*, 18 A. 339 (Pa. 1889)); *see also Caldwell*, 72 A.3d at 615 (quoting *State Jacobs*, 772 A.2d at 453).

Here, the 1959 Agreement sets forth the parties' expectations regarding development of the Premises, and by its terms accepts as sufficient the development of the 180-acre tract by adopting new provisions in light of decreased production activity on that tract by 1959. As noted above, by the time of the 1959 Agreement, there were only three operating wells remaining, and no new wells had been drilled in more than thirty years. Instead of insisting on the drilling of new wells, the parties affirmed the status quo and modified the 1916 Lease in light of the decades-long decrease in production on the Premises. *See* Def.'s Ex. B. In particular, the parties' 1959 well-rental provision setting forth the applicable well-rental rate "should any other well or wells be drilled," confirms that no additional development was either mandated or necessary in order to continue the 180-acre Lease in full force and effect. The 1959 amendatory Agreement of the parties thus "preclude[s] the application of the [implied covenant] doctrine." *See State Jacobs*, 772 A.2d at 453. Because the implied covenant to develop is inapplicable, given the express agreement of the parties, EXCO's Motion for Summary Judgment as to Count II of Plaintiffs' Complaint, "Breach of Implied Covenant to Develop," is granted.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs' Partial Motion for Summary Judgment on Count I, ECF No. 34, is denied in its entirety, and Defendant EXCO's Cross-Motion for Summary Judgment as to Counts I and II, ECF No. 43, is granted in its entirety. An appropriate Order will follow.

Dated: February 14, 2014
cc: All counsel of record

Mark R. Hornak
United States District Judge